UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Oak Hill Investment IV LLC, et al.,                    Case No. 15-cv-1996

        Plaintiffs

    v.                                                      MEMORANDUM OPINION

State Farm Fire and Casualty Company,

        Defendant

## I. Introduction

Before me are: (1) Defendant State Farm Fire and Casualty Company's motion for summary judgment (Doc. No. 15); (2) Plaintiff Oak Hill Investment IV LLC's motion for partial summary judgment. (Doc. No. 16); (3) Plaintiff's response in opposition of Defendant's motion for summary judgment (Doc. No. 17); and (4) Defendant's reply in support of its motion for summary judgment. (Doc. No. 18).

## II. Background

Plaintiff Oak Hill Investment IV LLC owns a two-story office building located in Toledo, Ohio. Defendant State Farm Fire and Casualty Company insured the building and business personal property in it under the Businessowners Coverage Form ("Policy"). (Doc. No. 15-2). On June 27, 2015, there was a severe rainstorm in the area. Because one of the scupper drains on the roof was clogged with windblown debris, water began to rise and eventually entered an open air conditioning unit. The water flowed through the HVAC ductwork and damaged the interior of the building. After the storm, a State Farm representative inspected the property twice. Both times he found the damage to the interior of the building was not covered under the Policy. State Farm paid for some

personal property of the business covered by an Inland Marine Endorsement to the Policy.  *Id.* at 65-73.  Oak Hill filed suit against State Farm asserting claims for declaratory judgment, breach of contract, and bad faith, and requesting punitive damages.

III.  STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor.  *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014).  A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law.  *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

IV.  DISCUSSION

Both Oak Hill and State Farm move for summary judgment on the declaratory judgment and breach of contract claims.  State Farm also moves for summary judgment on the claim of bad faith and the request for punitive damages.

A.   Breach of Contract

The parties dispute whether or not State Farm properly denied Oak Hill's insurance claim under the terms of the Policy.  State Farm contends that the damaged property was not covered by the policy and, alternatively, that the cause of the loss was excluded from the coverage of the policy.  Oak Hill disagrees.

"A policy of insurance is a contract and like any other contract is to be given a reasonable construction in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed."  *Dealers Dairy Prods. Co. v. Royal Ins. Co.*,

2

170 Ohio St. 336, 339 (1960). If a provision of the insurance policy is ambiguous, it is to be construed in favor of the insured, allowing coverage exclusions only when "*clearly* intended to be excluded." *Westfield Ins. Co. v. Hunter*, 128 Ohio St. 3d 540, 543 (2011) (citations omitted). But if there is no ambiguity and the "words used in [the] policy of insurance have a plain and ordinary meaning, it is neither necessary nor permissible to resort to construction unless the plain meaning would lead to an absurd result." *Olmstead v. Lumbermens Mut. Ins. Co.*, 22 Ohio St. 2d 212, 216 (1970).

1. Property Subject to Limitations (1)(e)

Although the Policy covers buildings under Coverage A, it states that:

> 1. We will not pay for loss to:
>     e. The interior of any building or structure, or the property inside any building or structure, caused by rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
>         (1) The building or structure first sustains damage by a Covered Cause Of Loss to its roof, outside walls, or outside building glass through which the rain, snow, sleet, ice, sand or dust enters; or
>         (2) The loss is caused by thawing of snow, sleet or ice on the building or structure.

(Doc. No. 15-2 at 6). This language is not ambiguous. By the plain language of the contract, damage to the interior of the building will only be covered if the roof is damaged by a Covered Cause of Loss and *then* rainwater comes through the area of the roof that is damaged. Although Oak Hill argues that grammatical rules should be applied to find another meaning in the language, this construction is prohibited unless the plain meaning of the limitation would lead to an absurd result. The limitation does not bar all water damage to the interior, but instead confines coverage to a scenario when the exterior of the building was damaged in a way that would let water into the building such as a puncture to the roof by a fallen tree branch. I do not find this to be an absurd result. *See, e.g.*, *Eagle West Ins. Co. v. SAT, 2400, LLC*, 187 F.Supp.3d 1231, 1239-40 (W.D. Wash. 2016) (interpreting a clause with nearly identical language as barring "coverage for loss to the building's interior unless rain first damages, and then enters through, the building's exterior").

3

The water that caused the damage to the interior of the building entered through an air conditioning unit on the roof. The unit through which it entered was not damaged. Instead, it was the scupper drain, clogged with debris, which caused the water to rise on the roof and enter the unit. Since the water did not enter the interior of the building through the damaged drain but instead the undamaged air conditioning unit, Limitation 1(e) bars coverage for the water damage to the interior of the building.

2.     Section I—Exclusions (1)(h)

While State Farm "will pay for accidental direct physical loss to [the] Covered Property," the Policy excludes coverage for losses caused by:

> h. Water
> (1) Flood, surface water, waves (including tidal waves, tsunami, and seiche), tides, tidal water, overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not;
> …
> (3) Water or sewage that backs up or overflows from a sewer, drain or sump.
> …
> (5) Material carried or otherwise moved by any of the Water, as described in Paragraphs (1) through (4) above.

(Doc. No. 15-2 at 5, 7). The language of the section on exclusions is anti-concurrent, excluding losses under *any* exclusion. *Id.* at 7. Oak Hill argues that the cause of loss does not fall within any subsection of the water exclusion. State Farm does not contest that Section (h)(5) does not apply, but alleges that the cause of the loss is excluded as "surface water" under Section (h)(1) or "back up or overflow" under Section (h)(3).

a.     Surface Water

Surface water is not defined within the Policy, but, according to the Supreme Court of Ohio,

> Surface water is that which is diffused over the surface of the ground, derived from falling rains and melting snows, and continues to be such until it reaches some well-defined channel in which it is accustomed to and does flow with other waters, whether derived from the surface or springs, and it then becomes the running water of a stream, and ceases to be surface water.

4

*Crawford v. Rambo*, 44 Ohio St. 279, 282 (1886). The Sixth Circuit found accumulating rainwater to be surface water until "waters are lost by percolation, evaporation, or *by reaching some definite watercourse* or substantial body of water in which they are accustomed to and do flow with other waters." *Front Row Theatre, Inc. v. Am. Mfrs. Mut. Ins. Cos.*, 18 F.3d 1343, 1347-48 (6th Cir. 1994) (citations omitted) (applying the principle to an Ohio insurance claim and distinguishing surface water that was unable to enter the drain because of blockage from backed up water that had already entered the sewer system and came back out). Ohio courts have interpreted the definition of surface water broadly to include not only water that has never been channeled, but also water that "backed up from a drain." *Myers v. Encompass Indem. Co.*, 169 Ohio App. 3d 545, 549-50 (Ct. App. 2006); *see also Reith v. McGill Smith Pushon, Inc.*, 163 Ohio App.3d 709, 716 (Ct. App. 2005), *appeal denied*, 108 Ohio St. 3d 1439 (2006) ("[T]he surface rain water that was temporarily channeled underground through pipes remained surface water until it reached an endpoint where it mixed with 'other waters.'").

Although Oak Hill argues that *Front Row* is distinguishable because the water in that case pooled on a driveway rather than a roof, the driveway was a man-made surface, just like a roof. In *Fidelity Cooperative Bank v. Nova Casualty Co.*, 726 F.3d 31 (1st Cir. 2013), the court held that water that pooled on a roof during a rainstorm because of an inadequate drain, was surface water. 726 F.3d at 39-40. The *Fidelity* court stated, "damage resulting from water that flooded into properties after accumulating on artificial surfaces does not lose its character as 'surface water' merely because it flowed along the artificial surface and seeped into or continued to flow onto the property." 726 F.3d at 40. Of the two cases on which *Fidelity* based its holding, one dealt with the flooding of a paved parking lot and cited *Front Row* in support of its holding that the water on the man-made surface was surface water. *Surabian Realty Co. v. NGM Ins. Co.*, 462 Mass. 715, 718-19 (2012).

As Oak Hill notes, there is a minority of courts who have found water pooling on artificial surfaces, including roofs, is not considered "surface water." *See, e.g., Flamingo S. Beach Condo. Ass'n, Inc. v. Selective Ins. Co. of Se.*, 492 F. App'x 16, 20 (11th Cir. 2012) (finding rainwater accumulating on a

5

deck not to fit the definition of surface water); *Cochran v. Travelers Ins. Co.*, 606 So.2d 22, 24 (La. Ct. App. 1992) (holding water on a roof was not surface water). But, like *Fidelity*, the majority of courts have interpreted surface water to include that which lands on artificial surfaces. *See Martinez v. Am. Family Ins. Co.*, -- P.3d --, No. 16CA0456, 2017 WL 526121, at *5-*6 (Colo. App. Feb. 9, 2017) (finding "ground" within the definition of "surface water" to include man-made surfaces including the roof at issue in the case); *Sherwood Real Estate & Inv. Co. v. Old Colony Ins. Co.*, 234 So.2d 445, 447 (La. Ct. App. 1970) (finding a pool of rainwater on the roof to be surface water); *Bringhurst v. O'Donnell*, 14 Del. Ch. 225 (1924) ("In the case of a building erected on land, the roof is to be regarded as an artificial elevation of the earth's surface. When it intercepts the falling rain or snow, it therefore gathers surface waters.").

Neither the Ohio definition nor the majority of case law, including that in Ohio and the Sixth Circuit, require "surface water" to be defined so narrowly as only water that lands on the dirt. The water at issue here "derived from falling rains." Just as the court in *Martinez*, I find the plain meaning of the word "ground" to include the roof on which a man could walk or an object could rest. *Martinez, supra* at *5. The water was not channeled to a greater water source, but instead pooled on the roof due to the clogged drain and eventually seeped into the building through the HVAC ductwork. Based on the plain meaning of the word, the Ohio definition, and case law, I find the rainwater that accumulated on the roof to be "surface water" excluded under the Policy.

b. Overflow or Back-Up

Exclusion (h)(3) excludes coverage for losses caused by water that backs up or overflows from drains. While State Farm asserts that this exclusion applies, Oak Hill argues that since the drain was clogged, the water did not overflow or back up from the drain but was completely diverted. Both interpretations of similar language have been accepted by courts. *See, e.g., Scorpio v. Underwriters at Lloyd's, London*, No. 10-325 ML., 2012 WL 2020168, at *3 (D.R.I. June 5, 2012) (finding for State Farm's position); *Eagle West Ins. Co.*, 187 F.Supp.3d at 1235-36. (finding for Oak

6

Hill's position).  In *Tran v. Seneca Insurance Company, Inc.*, No. 14-5491, 2015 WL 5964996 (E.D. Penn. Oct. 14, 2015), the court found four alternate interpretations for the same language as that currently at issue. *Tran*, *supra*, at *3-*4.  Finding for the insured on the basis that the cause of loss was not clearly excluded, the court cited the decisions of other courts who had interpreted the language in the various ways to determine that a reasonable jury could find for any of the interpretations. *Id.*

After reviewing the language of the contract, I too find the language of the exclusion to be ambiguous and Oak Hill's interpretation to be reasonable. Although the water did accumulate on the roof because the drain was clogged, it did not necessarily back up or overflow *from* the drain. The water did not overwhelm the drain and there was no damage to the pipes stemming from it. Instead, the drain was completely sealed. Since ambiguities are resolved in favor of the insured, the cause of loss is not clearly excluded from coverage and is not a basis to deny coverage.

Exclusion (h)(3) is not an adequate basis to deny coverage. But one cause of loss is excluded as "surface water" under Exclusion (h)(1), and the damage to the interior of the building is not Covered Property, pursuant to Limitation (1)(e). Because State Farm did not breach the contract by denying coverage, summary judgment is granted to State Farm on the breach of contract and declaratory judgment causes of action.

B.      Bad Faith

Under Ohio law, an insurer's decision to deny coverage is not in itself "bad faith," but the refusal "may not be an arbitrary or capricious one [, but] must be based on circumstances that furnish reasonable justification therefor."  *Hart v. Republic Mut. Ins. Co.*, 152 Ohio St. 185, 188 (1949); *see also Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276-77 (1983); *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 554-55 (1994).  Contrary to Oak Hill's argument, the court in *Zoppo* "expressly overrul[ed]" *Motorists Mutual Insurance Co. v. Said*, 63 Ohio St.3d 690 (1992), based upon the fact that "intent" had never been an element of bad faith. *Zoppo*, 71 Ohio St. 3d at 554-55.

Here, as discussed above, State Farm's decision to deny the claim was supported by the plain language of at least two sections of the Policy. Additionally, State Farm did not deny the claim outright, but performed multiple inspections and covered the loss to some of the personal property of the business under the Inland Marine Endorsement to the Policy. State Farm did not act arbitrarily, but instead investigated the claim with diligence and based its refusal on the plain language of the Policy. Since the decision to deny was based on "reasonable justification," State Farm is granted summary judgment on the claim of bad faith.

C.     Punitive Damages

"[P]unitive damages may be recovered against an insurer who breaches his duty of good faith in refusing to pay a claim of its insured upon adequate proof." *Hoskins*, 6 Ohio St. 3d at 277 (requiring "actual malice" to award punitive damages). Here, State Farm did not act in bad faith by refusing to pay for the loss, let alone do so with actual malice. Oak Hill may not recover punitive damages.

V.     CONCLUSION

For the foregoing reasons, State Farm's motion for summary judgment is granted. (Doc. No. 15). Oak Hill's motion for partial summary judgment is denied, accordingly. (Doc. No. 16).

So Ordered.

s/ Jeffrey J. Helmick<br>United States District Judge